IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEO SCHWARTZENBERGER,<br><br>   Petitioner,<br><br> v.<br><br>F. GONZALES, Acting Warden,<br><br>   Respondent.<br>_____ | No. C 10-0858 SBA (PR)<br><br>**ORDER GRANTING RESPONDENT'S MOTION TO DISMISS PETITION AS UNTIMELY; DENYING PETITIONER'S PENDING MOTION; AND DENYING A CERTIFICATE OF APPEALABILITY**<br><br>(Docket nos. 8, 11) |

  Petitioner Leo Schwartzenberger, a state prisoner, filed the instant pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Before the Court is Respondent's motion to dismiss the instant petition as untimely under 28 U.S.C. § 2244(d) -- the statute of limitations set by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). That motion is fully briefed.

  Also before the Court is Petitioner's "Motion for Reversal of Conviction and Release Order for Discharge From the State Prison" (docket no. 11).

  Having considered all of the papers filed by the parties, the Court GRANTS Respondent's motion to dismiss and DENIES Petitioner's aforementioned motion as without merit.

**BACKGROUND**

  On December 7, 2004, Petitioner entered a guilty plea to three counts of lewd acts on a child under the age of fourteen. On December 13, 2004, he was sentenced to twelve years in state prison. He did not pursue a direct appeal of his conviction. However, the record shows that approximately four years after his sentencing hearing, Petitioner filed two "motions seeking relief from the restitution and fines imposed at the time of sentencing." (Resp't Ex. 1; Pet. for Rev. Ex. A, Contra Costa Cty. Sup. Ct. Decision dated Sept. 3, 2009, at 2.) Although the exact dates these motions were filed are unclear, it appears that the first motion was filed around late 2008 or early 2009, because on January 13, 2009, the state superior court denied the first motion for relief "on the grounds that the motion is untimely and the Court has no jurisdiction to modify a 4-plus year-old sentence." (Resp't Ex 1, Pet. for Rev. Ex. F, Contra Costa Cty. Sup. Ct. Decision dated May 13, 2009, at 1.) The second motion was most likely filed between January 13, 2009 and early May of 2009 because on

May 13, 2009, the state superior court denied it for the same reasons stated in its January 13, 2009 Order.[1]  (Id.)

On June 10, 2009, Petitioner filed a motion for a "copy of the transcript of his plea in order to file a late notice of appeal," and he also filed a "late motion to modify the sentence/conviction and restitution fine."  (Opp'n Ex. E.)  The state superior court denied his motion for transcripts in an Order dated September 3, 2009 (and filed on September 4, 2009), stating: "The motion will be denied on the ground that it is untimely and the Court has no jurisdiction to modify a 4-year old sentence.  Further, defendant is barred as a matter of law from filing a late notice of appeal."  (Id.)

On June 16, 2009, Petitioner wrote a letter to his trial counsel, G. Wright Morton, requesting a copy of the "trial transcript."  (Resp't Ex. 1, Pet. for Rev. Ex. F, Atty. Morton's June 25, 2009 Letter, at 1.)  On June 25, 2009, Attorney Morton responded to Petitioner's request, stating: "No trial transcript would have been prepared because there was no trial.  A transcript of the sentencing hearing would be available but that must be ordered from the court reporter and paid for."  (Id.)

In an undated letter, Petitioner responded to Attorney Morton's June 25, 2009 letter, requesting a "copy of [his] court proceedings, for which [he] is entitle [sic] for to [sic] continue [his] appeal process."  (Opp'n Ex. B.)  He stated that it was Attorney Morton's "responsibility to get [him]

---

[1] In his opposition, Petitioner claims that the second motion seeking relief from the restitution and fines at the time of sentencing was filed on "May 13, 2009," because on that date he filed a document entitled, "Notice od [sic] Appeal to File Late Petition for Habeas Corpus By a Person in State Custody (28 U.S.C. § 2254) and Request for Trial Transcript Court Proceeding," in the Contra Costa County Superior Court.  (Opp'n at 4, Ex. A.)  He has also attached a "Proof of Service by Mail" stating that he served a copy of his "late" petition on May 13, 2009.  However, the attached documents submitted, labeled "Exhibit A," do not include the proper filing date stamps necessary to prove that the alleged May 13, 2009 filings were actually filed in the state superior court on that date.  Petitioner's signature on the "late" petition is smudged, which indicates that this document may have been a reproduction of the original.  Finally, it is unlikely that this "May 13, 2009" filing is equivalent to the second motion, because the state superior court addressed that second motion on May 13, 2009, the same date it was allegedly filed.  Moreover, Petitioner requested a copy of his trial transcript in the "late" petition, which the state superior court did not address in its May 13, 2009 Order.  Therefore, this Court cannot rely on the documents attached to Petitioner's opposition as "Exhibit A" to show that May 13, 2009 was the date he filed his second motion.

2

a free copy." (Id.) Finally, he added: "Please take notice that I am appealing my case on writ of habeas corpus, and I respectfully request that you make necessary arrangements to obtain a free copy [of his transcript] for my appeal." (Id.)

On July 10, 2009, Petitioner filed a motion for leave to file a late notice of appeal in the California Court of Appeal, First Appellate District, Division 2 (First District). (Opp'n Ex. B.) The First District's online database indicates that on July 21, 2009, the First District Appellate Project (FDAP) sent a letter "in re review of in propria persona motion for relief to file late notice of appeal." On August 24, 2009, the First District denied Petitioner's motion for leave to file late notice of appeal.[2]

On August 31, 2009, Bonnie Palmer, a clerk from the FDAP, sent a letter to Petitioner informing him that the First District denied his motion for leave to file late notice of appeal, and included a copy of the First District's August 24, 2009 Order. (Opp'n Ex. D.) Ms. Palmer added, "You must . . . prepare and file the habeas petition on your own. If after the court reviews your petition, it believes you have presented a case of possible error, the court might appoint counsel for you, but you must prepare and file the petition on your own." (Id.)

Petitioner submitted a document, signed on August 31, 2009, entitled, "Notice od [sic] Appeal to File <u>Late</u> Petition for Habeas Corpus By a Person in State Custody (28 U.S.C. § 2254) and Request for Trial Transcript Court Proceeding," in the Contra Costa County Superior Court. The superior court clerk filed the document on September 17, 2009, and docketed it as a notice of appeal. In that document, Petitioner requested the state superior court to "provide him with transcripts [of

---

[2] In his opposition, Petitioner claims that it was on "August 24, 2009" when he filed his motion for leave to file a late notice of appeal in the First District. Similar to his alleged "May 13, 2009" filing above, supra note 1, there is no filing date stamp on his alleged "August 24, 2009" filing, which indicates that this document may have also been a reproduction of the original. Finally, it is unlikely that the First District addressed the motion for leave to file a late notice of appeal on August 24, 2009, the same date it was allegedly filed. Therefore, the Court cannot rely on the document attached to Petitioner's opposition as "Exhibit B" to show that August 24, 2009 was the date he filed his motion for leave to file a late notice of appeal. Instead, the Court relies on the state court's online database, which indicates that the motion for leave to file a late notice of appeal was filed on July 10, 2009.

the] court proceedings" and to allow him to "file a late petition for modification of his sentence and restitution fines." (Opp'n Ex. C.)

On October 1, 2009, the state court's online database indicates that the "notice of appeal" was "lodged and received" in the First District. On October 2, 2009, the First District dismissed the September 17, 2009 appeal, stating:

> This court has previously denied defendant's motion to file a late notice of appeal from his 2004 conviction. (See Order, filed Aug. 24, 2009, First Appellate District Case No. A1225528.) To the extent defendant is seeking to appeal from the trial court's more recent ruling [filed] on September 4, 2009, which denied his motion for transcripts of his 2004 plea, the challenged ruling is not appealable.

(Opp'n Ex. G.)

On October 26, 2009, Petitioner filed a renewed motion for permission to file a late notice of appeal. On November 16, 2009, the First District denied his renewed motion.

On December 17, 2009, Petitioner filed a petition for review in California Supreme Court. On January 21, 2010, his petition for review was denied.

Petitioner then filed the instant federal petition on February 7, 2010.[3]

On September 20, 2010, Respondent filed a Motion to Dismiss Petition as Untimely (docket no. 8). On October 15, 2010, Petitioner filed an opposition to the motion. On October 22, 2010, Respondent filed a reply to Petitioner's opposition.

On March 31, 2011, Petitioner filed a motion entitled, "Motion for Reversal of Conviction

---

[3] A pro se federal or state habeas petition is deemed filed on the date it is delivered to prison authorities for mailing. See Saffold v. Newland, 250 F.3d 1262, 1268 (9th Cir. 2001), vacated and remanded on other grounds, Carey v. Saffold, 536 U.S. 214 (2002) (holding that a federal or state habeas petition is deemed filed on the date the prisoner submits it to prison authorities for filing, rather than on the date it is received by the court). The federal habeas petition was signed on February 7, 2010, which is the earliest date that the petition could have been delivered to prison authorities for mailing. For the purposes of this discussion, the Court deems that the petition was filed on that date.

The Court also notes that in the motion to dismiss, Respondent did not take the mailbox rule into account by initially indicating the petition was filed on "February 17, 2010." (Mot. to Dismiss at 2.) In the body of the motion to dismiss and in the reply, Respondent incorrectly indicates that the instant petition was filed on "July 21, 2009." (Id.) Again, the correct date that the petition was deemed filed is February 7, 2010.

and Release Order for Discharge From the State Prison" (docket no. 11).  In that motion, Petitioner claims that Respondent has not filed a reply to his opposition.  Contrary to Petitioner's claim, the record shows that Respondent's timely reply was filed on October 22, 2010.  Petitioner claims that due to the fact that "Respondent has failed to file a[n] objection in a timely manner, a judgment of acquittal must be ordered in this case."  (Pet'r Mar. 31, 2011 Mot. at 3.)  Petitioner also claims that he is "actually innocent" and "request[s] this Honorable Court to dismiss this case and release the prisoner from State Prison."  (Id.)  The Court finds that Petitioner's motion is without merit; therefore, it is DENIED.

The Court will now address Respondent's motion to dismiss the petition as untimely below.

## DISCUSSION

The AEDPA, which became law on April 24, 1996, imposed a statute of limitations on petitions for a writ of habeas corpus filed by state prisoners.  Petitions filed by prisoners challenging non-capital state convictions or sentences must be filed within one year of the latest date on which: (1) the judgment became final after the conclusion of direct review or the time passed for seeking direct review; (2) an impediment to filing an application created by unconstitutional state action was removed, if such action prevented petitioner from filing; (3) the constitutional right asserted was recognized by the Supreme Court, if the right was newly recognized by the Supreme Court and made retroactive to cases on collateral review; or (4) the factual predicate of the claim could have been discovered through the exercise of due diligence.  See 28 U.S.C. § 2244(d)(1).

The one-year period generally runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).  AEDPA's one-year time limit, however, did not begin to run against any state prisoner before the date of the Act's enactment.  Calderon v. United States District Court (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997) (allowing § 2244(d)'s limitation period to commence before AEDPA's enactment would have an impermissible retroactive effect), overruled in part on other grounds by Calderon v. United States District Court (Kelly), 163 F.3d 530 (9th Cir. 1998) (en banc).

A state prisoner with a conviction finalized after April 24, 1996, such as Petitioner,

ordinarily must file his federal habeas petition within one year of the date his process of direct review came to an end. See id. "[W]here a state court grants a criminal defendant the right to file an out-of-time direct appeal during state collateral review, but before the defendant has first sought federal habeas relief, his judgment is not yet 'final' for purposes of § 2244(d)(1)(A)" and is only final at the conclusion of direct review of "the out-of-time direct appeal, or the expiration of the time for seeking review of that appeal." Jimenez v. Quarterman, 555 U.S. 113, 121 (2009). However, the dismissal of a direct appeal as untimely does not constitute "the conclusion of direct review" under § 2244(d)(1)(A) where petitioner was not first granted leave to file an out-of-time direct appeal, by which the pendency of his direct appeal was restored. Randle v. Crawford, 604 F.3d 1047, 1054-55, 1056 (9th Cir. 2010) (rejecting the argument that the state court's dismissal of an untimely notice of appeal marked the beginning of the one-year limitations period because the state court never granted leave to file an untimely direct appeal, distinguishing this case from Jimenez, 555 U.S. at 121, where the state court granted petitioner the right to file an out-of-time appeal).

Here, Petitioner did not pursue a timely direct review of his conviction in 2004. The record shows that he attempted to file motions to file a late notice of appeal in 2009; however, these motions were denied by the state courts. Therefore, because Petitioner was never granted leave to file an out-of-time direct appeal, the state court's dismissals of his appeals do not constitute "the conclusion of direct review" pursuant to § 2244(d)(1)(A). See Randle, 604 F.3d at 1055-56 ("If the one-year limitations period were made contingent on the resolution of a petitioner's attempt to file an untimely notice of appeal, a petitioner could indefinitely delay the commencement of the one-year period by simply waiting to file such notice until after the normal expiration date.").

Instead, the one-year period may start running from "the expiration of the time for seeking [direct] review." 28 U.S.C. § 2244(d)(1)(A). If a petitioner could have sought review by the state court of appeals or the state supreme court, but did not, the limitation period will begin running against him the day after the date on which the time to seek such review expired. See Smith v. Duncan, 297 F.3d 809, 812-13 (9th Cir. 2002); see also Cal. Rule of Court 8.308(a) (providing that appeal from criminal judgment must be filed within sixty days after rendition of judgment or making

6

of order being appealed) (formerly Cal. Rule of Court 31).

In the present case, the statute of limitations started running on February 11, 2005, when Petitioner's sentence became final, which is sixty days after December 13, 2004, the date of sentencing. See § 2244(d)(1)(A); Cal. R. Ct. 8.308(a). Thus, Petitioner had until February 11, 2006 to file his federal habeas petition. Because he did not file the present petition until February 7, 2010 -- more than four years after the limitations period had expired -- the petition is untimely unless he can show that he is entitled to statutory or equitable tolling.

## I.     **Statutory Tolling**

The petition may nonetheless be timely if the limitations period was tolled under 28 U.S.C. § 2244(d)(2) for a substantial period of time. AEDPA's one-year limitations period is tolled under § 2244(d)(2) for the "'time during which a properly filed application for State post-conviction or other collateral review [with respect to the pertinent judgment or claim] is pending.'" Dictado v. Ducharme, 244 F.3d 724, 726 (9th Cir. 2001) (quoting 28 U.S.C. § 2244 (d)(2)), abrogated on other grounds by Pace v. DiGuglielmo, 544 U.S. 408 (2005).

As explained above, Petitioner did not file a direct appeal of his conviction. Instead, Petitioner only began filing "motions seeking relief from the restitution and fines imposed at the time of sentencing" in the end of 2008, at the earliest. Again, the record does not contain the exact dates Petitioner filed these motions. Thereafter, Petitioner claims that in 2009, he filed motions to file a late notice of appeal. Even if the Court were to liberally construe the record to show that Petitioner filed the first of his two "motions seeking relief from the restitution and fines imposed at the time of sentencing" in December of 2008, he is not entitled to statutory tolling under 28 U.S.C. § 2244(d)(2) because the limitations period had already run, more than two years earlier, on February 11, 2006. An application for state post-conviction or other collateral review filed after AEDPA's statute of limitations has ended cannot toll the limitations period. See Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003) (Section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed, even if the state petition was timely filed). Section 2244(d)(2) cannot "revive" the limitations period once it has run (i.e., restart

7

the clock to zero); it can only serve to pause a clock that has not yet fully run. See Rashid v. Kuhlmann, 991 F. Supp. 254, 259 (S.D.N.Y. 1998) (once the limitations period has expired, collateral petitions can no longer serve to avoid the statute of limitations). Accordingly, statutory tolling is not sufficient to overcome the time bar to Petitioner's federal habeas petition.

Because Petitioner did not meet the one-year requirement for filing the instant federal habeas petition, and he is not entitled to statutory tolling, his petition is barred as untimely under 28 U.S.C. § 2244(d)(1), unless he can show that he is entitled to equitable tolling of the limitations period.

## II. Equitable Tolling

The one-year limitations period can be equitably tolled because § 2244(d) is a statute of limitations and not a jurisdictional bar. Beeler, 128 F.3d at 1288. "When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate." Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999). Equitable tolling, however, is unavailable on most cases because extensions of time should be granted only if "extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." Beeler, 128 F.3d at 1288 (citation and internal quotation marks omitted). The prisoner must show that "the 'extraordinary circumstances' were the cause of his untimeliness." Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003) (citations omitted).

The petitioner bears the burden of showing he is entitled to equitable tolling, and the determination of whether such tolling applies is a fact-specific inquiry. Id. Thus, petitioner bears the burden of showing that this "extraordinary exclusion" should apply to him, Miranda v. Castro, 292 F.3d 1063, 1065 (9th Cir. 2002), and that "the extraordinary circumstances were the cause of his untimeliness and that the extraordinary circumstances made it impossible to file a petition on time," Ramirez v. Yates, 571 F.3d 993, 997 (9th Cir. 2009) (internal quotation marks and citations omitted). Where a prisoner fails to show "any causal connection" between the grounds upon which he asserts a right to equitable tolling and his inability to timely file a federal habeas application, the equitable tolling claim will be denied. Gaston v. Palmer, 417 F.3d 1030, 1034-35 (9th Cir. 2005). He must, furthermore, show that his untimeliness was caused by an

8

external impediment and not by his own lack of diligence. Bryant v. Ariz. Att'y Gen., 499 F.3d 1056, 1061 (9th Cir. 2007).

In the present case, Petitioner first argues that he is entitled to equitable tolling, because he is "representing himself in this action, [and] is poor, indigent and unable to afford an attorney to protect his interest of justice." (Opp'n at 3.) Petitioner adds that "[d]ue to the "Nature of Allegation" (which presumably means his conviction of lewd acts on a child under the age of fourteen), he "could not speak to anyone in prison, because he could be a victim of great bodily injury." (Id.) He adds that he:

> . . . waited until he arrived . . . at the California Correctional Institution, Tehachapi, which is a SNY-Yard in 2008, where he found a reliable Jail House Lawyer, and discussed his case, and since than [sic] he constructively filed numerous Notice of Appeals and requests for his trial transcripts, and filed his petition for writ of habeas corpus in Superior Court, County of Contra Costa, First Appellate District Court, California Supreme Court and Federal Court.

(Id.) Thus, liberally construed, Petitioner's claim appears to be that he is entitled to equitable tolling on the ground that he lacks the ability to fully and adequately comprehend the law, and could not pursue his collateral appeal in state court or file his federal petition without assistance of counsel or a jail house lawyer.

Petitioner's contentions lack merit. As an initial matter, he has no right to counsel on state or federal habeas. Wright v. West, 505 U.S. 277, 293 (1992) (citing Pennsylvania v. Finley, 481 U.S. 551, 555 (1987)); Coleman v. Thompson, 501 U.S. 722, 757 (1991). Moreover, ignorance of the law and lack of legal sophistication do not alone constitute extraordinary circumstances warranting equitable tolling. Rasberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006) (cataloguing cases from other circuits and holding that a pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance); see also Hughes v. Idaho State Bd. of Corr., 800 F.2d 905, 909 (9th Cir. 1986) (illiteracy of pro se petitioner insufficient cause to avoid procedural bar); Cantu-Tzin v. Johnson, 162 F.3d 295, 299-300 (5th Cir. 1998) (pro se status during state habeas proceedings did not justify equitable tolling); United States v. Flores, 981 F.2d 231, 236 (5th Cir. 1993) (pro se status, illiteracy, deafness and lack of legal training does not justify equitable tolling). Therefore,

Petitioner is not entitled to equitable tolling based solely on his lack of access to legal counsel (or a jailhouse lawyer) or ignorance of the law.

Petitioner next claims that he is entitled to equitable tolling based upon his trial counsel's failure to file a notice of appeal following sentencing and to advise him of such failure. (Opp'n at 2.) Respondent argues that Petitioner "has failed to provide any evidentiary support that counsel was directed to file such an appeal." (Reply at 2.) As noted, the record shows that Petitioner entered a guilty plea and received a negotiated disposition which limited his sentencing exposure. In addition, there is no evidence in the record to believe that there was any basis for appealing this favorable disposition. As explained above, the claim of legal error proffered by Petitioner in his initial post-conviction motions filed in 2008 and early 2009 concerned an attempt to modify the amount of the restitution fine, instead of a request for leave to file an out-of-time direct appeal.

Furthermore, Petitioner has not established his own diligence in contacting his trial counsel after he was sentenced to determine whether a notice of appeal had been filed. See Culver v. Dir. of Corr., 450 F. Supp. 2d 135, 1142-43 (C.D. Cal. 2006) (finding no equitable tolling where petitioner failed to demonstrate diligence in contacting counsel to determine whether petition for review had been filed and first habeas petition was not filed until five months after Court of Appeal denied his direct appeal). The only communication in the record between Petitioner and Attorney Morton occurred when they exchanged the 2009 letters, in which Petitioner requested a transcript of his "court proceedings," which presumably involved his plea hearing. (Opp'n Ex. B.) Notably, Petitioner does not allege that he made any inquiries about his notice of appeal prior to 2009. In fact, Attorney Morton's response to Petitioner's June 16, 2009 indicates that they had not been in communication for an extended period of time as evidence by the fact that Attorney Morton had to turn to his "time records, which refresh[ed] [his] recollection to a limited degree." (Resp't Ex. 1; Pet. for Rev. Ex. F, Atty. Morton's June 25, 2009 Letter, at 1.) Attorney Morton also indicated that he recalled that he "represented [Petitioner] between May and December of 2004, and that Petitioner "entered a plea and had a sentencing hearing which tool part o[n] the morning and part of the afternoon on December 13th." (Id.) There is no mention of Petitioner's alleged request for Attorney

10

Morton to file a notice of appeal, or the failure to file such an appeal. Accordingly, the Court finds that there is an insufficient factual basis for Petitioner's allegation that Attorney Morton was directed but failed to file a notice of appeal or that Attorney Morton failed to advise Petitioner of such failure.

Because Petitioner fails to offer a sufficient factual basis for his claim of equitable tolling due to his trial counsel's failure to file a timely notice of appeal, the Court will now consider whether further development of the record is necessary. In Laws v. Lamarque, the Ninth Circuit reversed the district court's order granting a motion to dismiss because it failed to develop the record in response to Law's claim of mental incompetency. 351 F.3d 919, 924 (9th Cir. 2003). The court determined that a district court should not require the petitioner to "carry a burden of persuasion" at the time he asserts equitable tolling to merit further investigation into the merits of his arguments for tolling. Id. Instead, Ninth Circuit cases require only that there be "circumstances consistent with [the] petitioner's petition . . . under which he would be entitled to . . . equitable tolling" to trigger further factual development of the record. Id. (citing Whalem/Hunt v. Early, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc) (remanding case to district court for development of facts concerning whether AEDPA materials were unavailable in the prison law library and the legal significance of such a finding)). Should further development of the record show evidence of attorney misconduct, the a district court would then be able to evaluate the egregiousness of the conduct.

The Ninth Circuit has held that attorney misconduct may constitute an extraordinary circumstance warranting equitable tolling only where the conduct is "sufficiently egregious." Spitsyn, 345 F.3d at 800. In Spitsyn, equitable tolling was deemed warranted where the attorney was hired nearly a full year in advance of the deadline but failed to prepare and file a petition, and was contacted by the petitioner and his mother numerous times by telephone and in writing. Here, Petitioner does not allege that his trial counsel demonstrated similar "sufficiently egregious" misconduct. In fact, Petitioner only offers vague and conclusory statements regarding his trial counsel's alleged negligence and fails to assert any misconduct by his trial counsel. Thus, the Court finds no need for further development of the record. Even if there were a sufficient factual basis for Petitioner's claim that his trial counsel failed to file a timely direct appeal, attorney negligence is not

11

a sufficient basis for applying equitable tolling to the section 2244(d)(1) limitations period, as further explained below. Holland v. Florida, 130 S. Ct. 2549, 2564 (2010).

The Court notes that the Ninth Circuit's decision in Randle is instructive. In that case, the petitioner argued that he met the equitable tolling requirement because his state-appointed appellate counsel failed to perfect a timely appeal. 604 F.3d at 1057. On appeal, the court noted that "Randle does not show how his counsel's failure to file a direct appeal delayed the filing of his state habeas action." Id. It further explained that "[c]ounsel's failure to perfect an appeal simply meant that Randle had one year from the expiration of his time to file a notice of appeal in which to initiate a federal habeas action -- it did not prevent him from filing the petition." Id. at 1058. Therefore, the Ninth Circuit held that Randle's counsel's negligence in failing to perfect direct appeal did not warrant equitable tolling because it did not cause delay in the filing of his federal petition.

Here, as in Randle, Petitioner is unable to show that his trial counsel's negligence was the direct cause of his failure to file a timely federal habeas petition. Because Petitioner fails to show "any causal connection" between the grounds upon which he asserts a right to equitable tolling and his inability to timely file a federal habeas application, the equitable tolling claim should be denied. See Gaston, 417 F.3d at 1034-35 (holding that where prisoner fails to show causal connection between self-representation on direct appeal or physical and mental disabilities and inability to timely file petition, district court's finding that he was not entitled to equitable tolling where he had earlier filed a state habeas petition was not clear error). Furthermore, Petitioner fails show that his untimeliness was caused by an external impediment, instead, it was caused by his own lack of diligence. See Bryant, 499 F.3d at 1061 (no equitable tolling where petitioner was not diligent in that he failed to seek any state court relief for six years, or to take advantage of available paralegal assistance). Petitioner's lack of diligence is evident from his delay in seeking any state court relief -- including pursuing motions for leave to file an out-of-time direct appeal during state collateral review, which he only started to pursue two years past the expiration of the limitations period. Accordingly, in the absence of a "causal connection" between his trial counsel's negligence and the inability to timely file his federal petition, and without a showing of reasonable diligence by

12

Petitioner, equitable tolling is unavailable on this ground.

Finally, the Court is unpersuaded by Petitioner's assertions in his opposition and in his state court filings relating to his failed efforts to obtain the transcript of the plea hearing. In some circumstances, lack of access to legal materials is an impediment of the type that may warrant equitable tolling. See Waldron-Ramsey v. Pacholke, 556 F.3d 1008, 1014 (2009) (citing Lott v. Mueller, 304 F.3d 918, 924-25 (9th Cir. 2002)); see also Ramirez, 571 F.3d at 998; Espinoza-Matthews v. California, 432 F.3d 1021, 1027 (9th Cir. 2005); Spitsyn, 345 F.3d at 801; Ford v. Hubbard, 330 F.3d 1086, 1107 (9th Cir. 2003), reversed on other grounds by Pliler v. Ford, 540 U.S. 1099 (2004); United States v. Battles, 362 F.3d 1195, 1198 & n. 5 (9th Cir.1998). However, Petitioner "bears the burden of showing his own diligence and that the hardship caused by lack of access to his materials was an extraordinary circumstance that caused him to file his petition . . . late." Waldron-Ramsey, 556 F.3d at 1013 (citing Pace, 544 U.S. at 418). Petitioner fails to satisfy this burden. Even assuming that the absence of the transcript was a circumstance beyond Petitioner's control, it was not unrealistic to expect Petitioner to pursue his habeas claims with reasonable diligence, and it does not appear that the records were necessary to enable Petitioner to raise his current claims. See Randle, 604 F.3d at 1058 (rejecting equitable tolling claim where "there is no indication that had Randle received the files sooner, he would have filed a federal habeas petition within the one-year limitations period"); Waldron-Ramsey, 556 F.3d at 1014 (even assuming that some period of lateness could be excused due to temporary lack of complete set of legal materials, it was insufficient to account for 340-day delay in light of other options available, such as preparing a basic form petition with anticipation of future amendment). Accordingly, in the absence of a showing of reasonable diligence by Petitioner, equitable tolling is also unavailable on this ground.

In sum, Petitioner's arguments for equitable tolling are unavailing. Based on a thorough review of the facts asserted in Petitioner's filings, the Court concludes that Petitioner has not demonstrated why equitable tolling should apply to his petition. That is, he alleges no facts which show an "extraordinary circumstance" meriting equitable tolling. See Beeler, 128 F.3d at 1289.

1  Accordingly, the limitations period will not be equitably tolled.

### III. Actual Innocence Exception

Petitioner has filed a motion entitled, Motion for Reversal of Conviction and Release Order for Discharge From the State Prison (docket no. 11), in which he claims that he is "actually innocent." (Pet'r Mar. 31, 2011 Mot. at 3.) While Petitioner does not specifically raise a claim that his sentence has resulted in a fundamental "miscarriage of justice," the Court, out of an abundance of caution, will address this claim. See Lee v. Lampert, No. 09-53276, slip op. 9883, 9886 (9th Cir. Aug. 2, 2011) (en banc).

Claims which challenge the constitutionality of the length of a sentence are subject to review at any time under the standard of review which allows a federal court to hear the merits of successive, abusive or procedurally defaulted claims if the failure to hear the claims would constitute a miscarriage of justice. See Sawyer v. Whitley, 505 U.S. 333, 330-40 (1992). Under the traditional understanding of habeas corpus, a "miscarriage of justice" occurs whenever a conviction or sentence is secured in violation of a constitutional right. See Smith v. Murray, 477 U.S. 527, 543-44 (1986). However, the Supreme Court limits the "miscarriage of justice" exception to habeas petitioners who can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327 (1995); see, e.g., Wildman v. Johnson, 261 F.3d 832, 842-43 (9th Cir. 2001) (petitioner must establish factual innocence in order to show that a fundamental miscarriage of justice would result from application of procedural default). Under this exception, a petitioner may establish a procedural "gateway" permitting review of claims which otherwise would be barred from federal review if he demonstrates "actual innocence." Schlup, 513 U.S. at 316 & n.32.

"[A] credible showing of 'actual innocence' under Schlup, excuses the statute of limitations period established by [AEDPA]." Lee, slip op. at 9886. Under this "equitable exception," a petitioner "may pass through the Schlup gateway and have his otherwise time-barred claims heard on the merits." Id. at 9889. In order to pass through the Schlup gateway, "a petitioner must produce

14

United States District Court
For the Northern District of California

sufficient proof of his actual innocence to bring him "within the 'narrow class of cases . . . implicating a fundamental miscarriage of justice.'" Schlup, 513 U.S. at 314-15 (quoting McCleskey v. Zant, 499 U.S. 467, 494 (1991)). "The evidence of innocence must be "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." Id. at 316. A petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Id. at 327. This exacting standard "permits review only in the 'extraordinary' case," but it "does not require absolute certainty about the petitioner's guilt or innocence." House v. Bell, 547 U.S. 518, 538 (2006) (quoting Schlup, 513 U.S. at 327).

A petitioner must support his claims "with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." Schlup, 513 U.S. at 324. "By enumerating [these] categories of evidence that could prove innocence, the Supreme Court made clear that less reliable kinds of evidence cannot support an actual innocence claim." Lee, slip op. at 9913 (Kozinski, J. concurring). A reviewing habeas court then "consider[s] all the evidence, old and new, incriminating and exculpatory, admissible at trial or not." House, 547 U.S. at 538 (internal quotation marks removed). On this complete record, the court makes a "'probabilistic determination about what reasonable, properly-instructed jurors would do." Id. (quoting Schlup, 513 U.S. at 329). The court is to "assess how reasonable jurors would react to the overall, newly supplemented record." Id. In sum, a petitioner must show that it is more likely than not that "no reasonable juror would have convicted him." Schlup, 513 U.S. at 327. Stated another way, a petitioner must "persuade [a reviewing court] that every juror would have voted to acquit him." Lee, slip op. at 9913 (citing Schlup, 513 U.S. at 327) (Kozinski, J. concurring).

Here, Petitioner's conclusory allegation that he is "actually innocent" falls far short of establishing that the exception applies to him. As mentioned above, the actual innocence exception applies only if the petitioner presents evidence which creates a colorable claim of actual innocence, that is, that the petitioner is factually innocent of the charge for which he is incarcerated as opposed

15

to legally innocent as a result of legal error. Schlup, 513 U.S. at 321; see Bousley v. United States, 523 U.S. 614, 623-24 (1998) (actual innocence means factual innocence, not merely legal insufficiency). Here, Petitioner's conclusory claim that he is "actually innocent" is contradicted by the fact that he entered a guilty plea. In his petition, he claims that he is "innocent and because of indigency he could not afford an attorney of his own choice to protect his interest of justice . . . ." (Pet. at 44.) Thus, he claims that he was "forced into a guilty plead [sic] to avoid harsher and cruel and unusual punishment." (Id.) However, instead of requesting relief in the form of withdrawing his guilty plea, Petitioner merely requests that this Court "modify [his] sentence, conviction and restitution fine." (Id.)

Moreover, at no point has Petitioner claimed that had he had an opportunity to present evidence at a jury trial, then it would have been more likely than not that "no reasonable juror would have convicted him." Schlup, 513 U.S. at 327. Petitioner simply claims that the victim's "allegation was false." (Pet. at 13.) However, he has not come forward with new reliable evidence showing that he did not engage in the wrongful conduct. He instead claims that he "cooperated with the prosecution . . . accepted responsibility and pleaded guilty." (Id.) He recounts the facts of the case, makes a conclusory argument that he "never acted in lascivious conduct," (id. at 14), and concedes that he "intelligently, explicitly entered into [a] guilty plea," (id. at 16). He also makes the legal arguments that the trial court's sentence is "highly disproportionate" because the sentencing court "must allow reduction of sentence when a defendant intelligently accepts responsibility" and that his counsel provided ineffective assistance. (Id.) The miscarriage of justice exception simply is inapplicable in this case, especially where Petitioner mainly argues that his sentence needs modification because it was "unauthorized." (Id.) The Court agrees with the Sixth Circuit Court of Appeals, which rejected a similar argument, stating: "the constitutional errors claimed by [the petitioner] . . . do not implicate the 'concern about the injustice that results from the conviction of an innocent person,' that underlies 'actual innocence' tolling." Casey v. Tennessee, 399 F. App'x 47, 49 (6th Cir. 2010) (quoting Schlup, 513 U.S. at 325) (proscribing Schlup gateway where petitioner argued that he was tried in the wrong court).

Accordingly, Petitioner is not entitled to review of his petition under the actual innocence exception.

### IV. Certificate of Appealability

The federal rules governing habeas cases brought by state prisoners have been amended to require a district court that dismisses or denies a habeas petition to grant or deny a certificate of appealability (COA) in its ruling. See Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009).

For the reasons stated above, Petitioner has not shown "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Accordingly, a COA is DENIED.

### CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. Petitioner filed a motion entitled, "Motion for Reversal of Conviction and release Order for Discharge From the State Prison" (docket no. 11) is DENIED as without merit.

2. Respondent's motion to dismiss the petition as untimely (docket no. 8) is GRANTED. This action is DISMISSED WITH PREJUDICE.

3. A certificate of appealability is DENIED. Petitioner may seek a certificate of appealability from the Ninth Circuit Court of Appeals.

4. The Clerk of the Court shall terminate all pending motions, enter judgment, and close the file.

5. This Order terminates Docket nos. 8 and 11.

IT IS SO ORDERED.

DATED: September 30, 2011

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

LEO SCHWARTZENBERGER,

        Plaintiff,

v.

F GONZALES et al,

        Defendant.

Case Number: CV10-00858 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on October 12, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Leo Schwartzenberger V-62320
California Correctional Institution
P.O. Box 608
Tehachapi, CA 93581

Dated: October 12, 2011

        Richard W. Wieking, Clerk
        By: LISA R CLARK, Deputy Clerk

G:\PRO-SE\SBA\HC.10\Schwartzenberger1137.grantMTD&denyCOA.frm    18